ment. The bond is not properly separable from the mortgage for the purpose of assessment. The relator claims that, if the bond and mortgage are assessed together, the result will be double taxation, as the real estate is assessable without regard to the incumbrances thereon. Such may be in some cases the practical result, although one person is not assessed or taxed doubly for the same property. But there is no constitutional limitation upon the legislative power to effect such a result.

Upon the undisputed allegations of the petition, the relator is not entitled to the relief sought. Proceedings dismissed.

---

## WOODFORD et al. v. BRINKER et al.

(Supreme Court, Appellate Division, Fourth Department. January 30, 1900.)

1. WATERS AND WATER COURSES—CONTRACT NOT TO DECREASE FLOWAGE.

Where plaintiff deeded defendant railroad company a right of way, an agreement by defendant, in a contract executed prior to the deed, that the construction of the railroad should not diminish the flow of water to plaintiff's mill, was operative, since it did not add to or subtract from the estate conveyed by the deed.

2. SAME—EQUITY—RESTORATION OF FLOWAGE.

Where defendant railroad company contracted with plaintiff for a right of way, and agreed not to diminish the flow of water to plaintiff's mill, but did so by building a wall along its track, equity will not decree a removal of the wall, where it appears that the flow of the water can be restored without its removal, and where the deed for the right of way was not executed until after the wall had been built.

3. SAME—MEASURE OF DAMAGES—DIMINUTION IN VALUE—LOSS OF USE.

Where the water power of plaintiff's mill was decreased by an act of the defendant in violation of a contract between them, plaintiff cannot recover both permanent damages for the diminution in the value of the mill, and also damages for the temporary loss of its use, since the measure of the permanent damages would be the difference in the value of the mill before and after the breach of contract, with interest to the time compensation was made, which would cover the entire loss.

4. SAME—COST OF RESTORATION—BURDEN OF PROOF.

Where the water power of plaintiff's mill was decreased by the wrongful act of the defendant, and the restoration of the water power can be made for less than the diminution in the value of the mill, plaintiff cannot recover such diminution in value; and the burden is on him to show what the cost of restoring the water power would be, so the trial court can tell which rule of damages to apply,—the cost of restoration or the diminution in value.

5. SAME—PROOF OF RENTAL VALUE.

Where defendant, in violation of a contract, decreased the flow of water to the plaintiff's mill, and the plaintiff did not prove what the cost of restoring the water power would be, but did show the rental value of the mill, he is entitled to recover such rental value from the time the water power should have been restored under the contract until the defendant, under a decree of restoration by the court, actually restores the water power.

Appeal from special term, Niagara county.

Action by Henry E. Woodford and another against John M. Brinker and the Niagara Falls & Lewiston Railroad Company. Judgment for plaintiff. Defendants appeal. Affirmed on the report of a referee.

## The following is the opinion of Referee GEORGE CLINTON:

The parties to this action made a contract in the summer of 1896, dating it back to June, 1895. In that month they had come to the agreement which, in substance, is embraced in the contract as finally executed. Upon the execution of the instrument, in 1896, the plaintiffs made a deed, pursuant to the contract, to the defendant Brinker. I have said "the parties" made the contract, for the reason that, although the defendant corporation was not named in it and did not execute it, it is conceded that the contract was made by Brinker for it, and that it has assumed all of his obligations and liabilities. The material terms of the contract having arrived at in 1895, the defendants were permitted by the plaintiffs to enter upon the premises and proceed with the construction of its road. Although it had been agreed that the capacity of the water power should not be diminished by the defendants, the corporation, in constructing its roadway, erected a wall upon the right of way subsequently conveyed to it, in such a position as to materially affect the water power, and to reduce the capacity of the water wheel to develop power, to such an extent as to make it impossible to operate the mill with the machinery and wheel as they were when the corporation entered upon the premises. The capacity of the wheel was further diminished by acts of the defendant corporation affecting the tail race. The contract was executed and the deed given after the work done by the defendant corporation had been completed, and by the terms of the contract, as executed, the plaintiffs were to be paid $500 for the interruption of their business, and the defendants were given until September 1, 1896, to restore the water power. Upon these facts, it seems clear that the deed and contract are to be construed together. The granting portion of the deed cannot be affected, it is true, by any reservations in the contract, but promises in that instrument which do not add to or detract from the estate conveyed by the deed or the property transferred still remain binding. It follows that the agreement to restore the water power by September 1st remains operative. The instruments in question, as well as the circumstances surrounding the origin and making of the contract, to my mind conclusively show that the intent of the parties was that the agreement to restore should mean restoration of the water power to the capacity which it had at the time, and under the circumstances and conditions of the power which existed at the date given the contract. It appears from the evidence that the defendants did not restore the water power to its former capacity, but left it in such a condition that the mill cannot be operated. For this breach the defendants are liable.

I do not discover sufficient grounds for the granting of equitable relief compelling a removal of the wall. The case is somewhat peculiar in this respect. Plaintiffs having granted the right of way with the wall upon it, and there being nothing in the deed or contract imposing upon the defendant corporation or Brinker the duty of removing the wall, and there being nothing to found a cause of action upon except the promise to restore, this would not seem to be a proper cause for equity to decree the wall's removal. The case, however, is a proper one for equitable intervention by decree for specific performance, directing generally the restoration of the water power, in accordance with the construction I have given to the contract.

The question remaining to be determined is, what is the proper measure of the damages sustained by plaintiffs? The rights of the parties, so far as damages are concerned, are fixed by the time of the breach. This was September 1, 1896,—the date up to which the defendants had the right, under the contract, to defer the completion of the work of restoration. Plaintiffs claim that they are entitled to temporary damages, to be measured either by the loss of business, or the rental value of the property, and permanent damages for the deterioration in the value of the mill property by reason of the power not being sufficient, with the wheel and machinery as they existed in 1895, to operate the mill. The defendants' counsel claims that, if there be a right of recovery, the measure of damages is simply what it would cost to restore the power. The evidence is entirely insufficient to enable me to determine the cost of restoring the efficiency of the sluiceways so that the mill can be run as it was at the date of the contract. If the plaintiffs, therefore, are to be awarded

damages permanent in their nature, the only evidence before me of such damages is the diminution in value of the entire property by reason of the breach of contract. It is clear to my mind that the plaintiffs cannot recover for any loss of business, as that involves the idea of profits, which are not of such a nature as to furnish a measure of damages. The proper measure, if temporary damages are recoverable, is the loss of the rental value. If, however, permanent damages are awarded, there can be no allowance for temporary, as the measure of the permanent damages would be the difference between the value of the premises at the time of the breach of the contract, and the value they would then have had if the water power was in the condition in which it was in June, 1895, with interest. This would give full compensation for all loss the plaintiffs may have sustained. The plaintiffs have the right to elect to take damages for the loss of the use of their premises, or to demand compensation for the injury to the value of the property, but they cannot have both. Owing to the peculiar facts in this case, it is extremely difficult to determine which rule of damages apply. While there is evidence to show how much the premises would be worth in the condition in which they were at the date of the contract, and what they were worth after the breach, in the same condition, except as the water power had been so decreased that the existing wheel could not furnish power enough to run the mill, yet it is apparent on the testimony that the efficiency of the water power can be so restored as to leave the premises in as good condition as they were originally. While there is not sufficient proof to show the cost of restoring the efficiency of the water power, I am satisfied by the evidence that restoration can be made at a cost less than the diminution in value of the premises. The evidence is that by the removal of the old wheel, putting in a wheel of modern pattern, and cleaning out the tail race, greater power can be obtained than was originally furnished by the wheel in use; and it further appears to my satisfaction that, by an alteration of the discharge of the present wheel and the deepening of the tail race, the efficiency of the water power can be restored to an extent which will enable the plaintiffs to run their mill at its full capacity. The cost of restoring the power in either of these ways cannot, in my judgment, amount to nearly as much as the diminution in value of the premises by reason of the power as now applied being insufficient to run the mill, although there is not enough in the evidence to enable me to determine, with any accuracy whatever, this amount. It would seem, therefore, under Hartshorn v. Chaddock, 135 N. Y. 116, 31 N. E. 997, 17 L. R. A. 426, that the plaintiffs cannot recover the diminution in value. The principles enunciated in that case seem to lead to the conclusion, also, that the burden is upon the plaintiffs to establish the cost of restoration, so that the court may determine which measure of damages to apply,—loss of value, or cost of restoring; and, as the question seems to be fairly raised in this case, the plaintiffs, if my construction of that decision is correct, for this reason cannot recover the loss of value. The plaintiffs have made proof of the loss of rental value of the premises. This they are entitled to recover from September 1, 1896, when the restoration, by the terms of the contract, should have been completed, to the date of decision. The defendants are entitled to a reasonable time in which to restore the efficiency of the water power so as to obviate the loss in value to the premises. There is no evidence as to the time necessary to restore, except the fact that in the contract, which was executed in June, 1896, the parties agreed upon the 1st of September; thus substantially agreeing that about three months was sufficient time. The decree for restoration must therefore provide that the work be done within three months from the entry of judgment and notice thereof. As the plaintiffs will lose the use of the premises during the time allowed the defendants to restore the water power, the judgment must provide for compensation for the loss of the use from the time up to which specific damages are awarded to the time of the completion of the restoration. This disposition of the case would seem to equitably adjust the rights of the parties, and to protect the plaintiffs, as, in case restoration is made by the defendants, and the plaintiffs are paid for the loss of the use of their premises, compensation is afforded, while, if the defendants neglect to obey the mandate of the court, and do not restore the water power to its former state of efficiency, the court will have full power, in proper proceedings, and upon proper proofs, to adjust equitably,

by fine, the damages sustained by plaintiffs; for the court can then determine, upon such proofs, whether the plaintiffs are to be allowed the loss in value of the premises, or the cost of restoration, and can deduct from any amount allowed the compensation for loss of use given by my decision.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-LIAMS, and LAUGHLIN, JJ.

Bissell & Metcalf, for appellants.

Ely, Dudley & Cohn, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.

---

## STOKES v. STOKES.

(Supreme Court, Appellate Division, First Department.　March 1, 1900.)

1. JUDGMENT—DISMISSAL—RES JUDICATA.

    A dismissal of a complaint on the merits is a bar to any new action for the same cause of action, in view of Code Civ. Proc. § 1209, providing that a final judgment dismissing a complaint does not prevent a new action, unless it declares that it is rendered on the merits.

2. SAME.

    A judgment dismissing a counterclaim based on a contract will preclude a subsequent action on the contract, where the judgment is based on a finding that the contract cannot be enforced because of the impossibility of the performance of a condition that formed the consideration for the contract.

3. CONTRACTS—CONSIDERATION.

    Plaintiff agreed to purchase stock in a corporation of a third person in addition to stock owned by plaintiff, and not to sell any stock without giving defendant the first opportunity to purchase, and defendant agreed to deposit other stock owned by him with plaintiff as security against a foreclosure of a mortgage on the property of the corporation. *Held*, that defendant's agreement was in consideration of plaintiff's agreement to purchase stock, so that he was not bound to comply therewith on plaintiff's failure to purchase the stock.

4. SAME—DISMISSAL—RES JUDICATA.

    A dismissal of a counterclaim based on a contract precludes a subsequent action on the contract, where the dismissal is founded on a finding that the consideration for the contract had failed, though there is an additional finding that the contract had not been abandoned.

5. SAME—QUESTIONS FOR JURY.

    Questions as to whether there had been a breach by plaintiff of a contract sued on, or as to whether plaintiff had notified defendant of his intention not to fulfill his part of the contract, are questions of fact, which should be submitted to the jury, where such issues are raised, and there is evidence to support them.

6. SAME—CONDITIONS—PERFORMANCE.

    One to whom securities are delivered in consideration of his agreement to purchase corporate stock of a third person must return the securities on failing to purchase the stock within a reasonable time.

7. SAME.

    A finding in an action founded on a contract, that the contract had not been abandoned, will not prevent the avoidance of an enforcement of the contract in a subsequent action, on the ground that plaintiff himself was guilty of a breach of the contract.

    McLaughlin and Rumsey, JJ., dissenting.